Good morning, Your Honors. Attorney Daphne Barbee for Rodney Hodges. Mr. Hodges is an African-American male who worked as an RSS, that's the Range Safety Specialist or Range Safety Support. The terms are interchanged, but they're the same position. And he worked at Kaneohe Bay in the range there. Mr. Hodges is a 27-year-old, 27-year U.S. Marine veteran. Mr. Hodges worked for a number of years at the range as a Range Safety Specialist. He had a contract renewed every year based upon his evaluations. The contract was Stanley and then later CGI bought out Stanley, although I don't have any documents. What contract did he have? He had it with Stanley, which changed into CGI. I understand that. He had an employment relationship. But I didn't see any contract. And what I saw a reference to turned out to be the contract that the contractor had with the government. Is there a contract that Mr. Hodges himself entered with his employer? What would happen is That's a yes or no question. Is there a contract? The specific one that has his name on it? Correct. The contract with the government, and then they would hire him. Fine, but they've hired him. That doesn't necessarily give him a one-year contract. He may understand that his employment will be limited to whatever the duration his employer has an arrangement with the government. But I haven't seen anything that suggests to me that his employment was anything other than at will. You argue that it's a one-year contract, but the contract you pointed to was not a contract that your client was a party to. My client was hired by CGI, or sorry, Stanley at the time. And they had a one-year contract, which was renewed every year. So what legal authority means that your client had a one-year contract? Because he was renewed every year. No, not because. What legal authority said that your client had a one-year contract, that he wasn't an at-will employee? Well, if you look, okay, I have to, again, point out the purchase order with Stanley, and it says it's renewable every year. And pursuant to that contract, they hire certain people to work on the government, and it's my contention that it's a joint employer situation. And it's your contention, but I'm still waiting to see what legal authority supports the proposition that your client was not an at-will employee. And so far, I've heard none. Well, I'd like to point you out to the Stanley contract, and I can point you out to a specific page. If you read that contract in total, and it was presented by the Mavis Supplemental Record, it says that the contract, again, it's Stanley. It doesn't say Rodney Hodges, because it has a number of employees that it hires. Does it say that all of the employees that are working for Stanley or CGI at the beginning of that one year have to stay on the job for the entire year? Does it extend the one-year period of employment to Stanley's employees? Or could they put in whoever they wanted with the approval of the Navy? That's a very good question. In reviewing that contract, I didn't see those terms in there. Okay. So let's assume that it's not a one-year contract, that he was at-will. And does that make any difference to your analysis? No, because it was discrimination when he was terminated. So my analysis is Title VII still applies. Even if it's an at-will employee, they still have to abide by Title VII. So no. I did want to point out to a page. I looked at the purchase order contract yesterday. And it says Mavis Supplemental Record. And some of the terms of Stanley's contract is in there. And page 106 of the Supplemental Record does say that it would be at-will unless there was an agreement between the government and Stanley that it was a period of time. And in this situation, albeit it doesn't specifically say the employees will be hired for this period of time, it does say the period of time was one year. So the contract was in August 2010, and it would have expired August 2010. So that's the contract between Stanley and the Navy. That's correct. Okay. Counsel, I'm looking at SCR 6. Is that what you said? Yes. I believe it's page 6. I'm looking at page 6, and it's part of the complaint. The complaint begins at 1. This is the Mavis. There's two supplemental records on appeal, I believe. There's Mavis. There's also CGI. But the one I looked at yesterday was the Mavis one. And perhaps it was CGI, my mistake. But it's about five pages long, five to six pages. And at the part where it says at-will and the period of time, one year. So one can say that that's a conflict in the contract. On the one hand, it says at-will. On the other hand, it says, however, if there's a certain period of time, which is one year duration, it can be considered one year. Counsel, if you wouldn't mind, I'm having trouble locating the document you would like us to look at. I'm sorry. I thought it was maybe CGI supplemental record on appeal rather than Mavis. Page number? Starts at page 15. SCR 15? Or is it ER 15? CGI. I have SCR. I have a supplemental SCR. All right. At page 15? Yes. The contract. Go ahead. I'm sorry. Okay. I was trying to direct you to that. But at any rate, even though it may not specify all employees will work for one year, it's our contention, because there is conflicting language, and the fact that Mr. Hodges worked as a range support for a number of years and always had his contract renewed every year at the same time in August. Can you also help me understand the nature of the claims against CGI? As I understand it, Mr. Hodges was hired directly by CGI, but it sounded to me from your briefing that all of the claims of discrimination were for Navy employees. How is CGI implicated in your client's claims? First of all, CGI didn't hire him. It was Stanley. CGI later purchased Stanley. However, he was hired before Stanley contract and before CGI came on board, and he was hired by individuals who were part of the Navy because he's a veteran. The names of the people who hired him, Fry, he was a Navy employee. Heiskell, he was a Navy employee. No, I thought that the Navy had a contract with CGI, and CGI was actually his employer. So the Navy may have requested him, but CGI was his employer. Is that correct? CGI was not his original employer. It was Stanley. Okay, well, I'm talking since CGI acquired Stanley, let's just assume they're the same person for purposes of this analysis. So what did Stanley CGI do that was discriminatory, or how do your claims affect them? With respect to CGI, the claims are, is that Sergeant, Master Sergeant, sorry, Mr. Martinez, Sergeant Martinez. Okay, he was a Navy employee, correct? He was a Navy employee. It sent emails to CGI requesting that Mr. Hodges be terminated, that Martinez was also the individual who approved people on the range. It's a small group of people, and Mr. Hodges is the only African-American there. So is your theory that CGI knew that something discriminatory was going on? Yes. And is that in the complaint? What was their knowledge? Mr. Hodges contacted Sean Sullivan, who worked for CGI, and he did it by email and orally because Sean Sullivan is in Virginia, and he would come by to Hawaii maybe two times a year. And he would meet with Roger Hodges, and we actually have an email that he sent to Sean Sullivan saying that he's being harassed by Sergeant Martinez. And nothing was done about that harassment. And the next thing you know, he's being fired and terminated. And it was Sergeant Martinez that wrote to CGI saying that he wanted Rodney Hodges terminated. CGI, instead of doing a complete investigation to find out what's going on with Rodney Hodges and Martinez, because remember before then, he's a long-term employee. He was doing very well. So CGI did not do any investigation on Mr. Hodges' complaint of harassment. CGI- Where is the complaint of harassment? Can you just point me to that? I certainly will. I have that. To Mr. Sullivan. Yes. Thank you. It's on my record on appeal, page 68. It's an email to Sean Sullivan. Thank you. And he's talking about this as harassment. Again, nothing was done. Mr. Hodges testified at his deposition that he would call Vanessa Davidson, who was in human resource at CGI in Virginia, and complain. He also indicated that when he was placed on a PIP, which, by the way, was originally done by Martinez. Now, again, we're saying this is a joint employer situation. And later on, the CGI, and when I deposed Sean Sullivan, said he didn't write the PIP. It was Martinez that wrote the PIP, because he complained Mr. Hodges did not log into a computer to complete a list of people on the range. Mr. Hodges denies that. It's a genuine dispute. And he says that he did, in fact, finish and complete the list that Mr. Martinez wanted him to do so. So, at any rate, there's a lot of interaction. But Mr. Hodges is on the base in Kaneohe, and his supervisor was Martinez, as opposed to Mr. Sullivan. But he would call Mr. Sullivan to complain. For example, one example that is in the documents is that when Martinez wanted people to wear khaki pants instead of the regular range pants, he called Sean Sullivan to complain and was told, you know, just follow what Martinez says. And so he did. So Martinez was actually the de facto, if you will, supervisor of Mr. Hodges. And there was a problem with him singling out Mr. Hodges. For example, with the Secret Service dinner, it was Mr. Martinez, not CGI, who gathered the employees to have the dinner with the Secret Service and left Mr. Hodges, the only African-American on the range, alone. And, you know, excluding him. Do you want to save any time for rebuttal? Oh, yes. Thank you. Good morning. May it please the Court. I'm Lieutenant Tom Helper for the Navy, and I'm splitting my time with codependent counsel, 50-50, so I will keep track of that. All right. And I should also note that Richard Spencer should be substituted in as the named defendant as Secretary of the Navy. Okay. The district court here decided that there was no establishment of a prima facie case by Mr. Hodges because he wasn't performing at a satisfactory level in the spring of 2011. As an alternate ground, the district court also found that under the McDonnell-Douglas burden-shifting test that the Navy had advanced a nondiscriminatory reason for asking that Mr. Hodges be removed from the contract, that Mr. Hodges had failed to establish through substantial and specific evidence that that explanation was actually a pretext for discrimination. So Mr. Hodges' theory, at least in part as I understand it, is that Mr. Martinez had racial animus against him, and he was hired. It was really after Mr. Martinez came on board that he started getting these escalating complaints and concerns, although there were a couple of issues that were identified in your briefing before Mr. Martinez came on board. They did rehire him in, I guess, 2010. So it was really only when Mr. Martinez came on board that these things, escalating concerns and disciplinary issues, arose. So why doesn't that create a genuine issue of material fact that negates the legitimate nondiscriminatory reason? Because the reason for these complaints that he wasn't performing satisfactorily was because of Mr. Martinez. Well, a couple of things, Your Honor. One is the verb you chose, escalating, is exactly right. concerns and the same sort of concerns that Martinez expressed at maybe a higher volume were the same things that Sergeant, I'm sorry, Mr. Geltmacher, who was actually the decision-maker on the request to terminate Mr. Hodges, they were very consistent with the complaints he had received for a couple of years earlier from multiple individuals. So that confirms that it's not just Martinez. Had any action been taken against plaintiff before Mr. Martinez arrived? There may have been complaints, but Martinez's complaints were obviously a lot louder, as you said, and that appears to be what ultimately caused the break. There was a negative evaluation that he received in 2009 that's referred to, I believe, in an email. Because of the employment relationship where the Navy or the Marines aren't directly evaluating Mr. Hodges but passing their concerns on to the contractor, a lot of the communications are between the Marines and the contractor, but actually Mr. Hodges confirms at SCR 3, which is the complaint, that he received a negative evaluation from Geltmacher in 2008. I'm sorry, 2009. But yet it wasn't enough for them not to ask for him to be rehired, correct? Correct. But then you have to look at what are the merits of Sergeant Martinez's complaints. His complaint is that Mr. Hodges is argumentative, challenging to authority, and won't accept his own decisions, Martinez's own decisions and the decisions of others, on how to conduct range safety and other matters, petty matters, some of them, the dress code, whether he could be required to mow the lawn, to the extent that they had to rewrite his position description or the position description of all of them to deal with all the complaints that Hodges and Hodges alone was raising. Now, the key thing here is that Mr. Hodges doesn't dispute any of this about these challenges to authority. He embraces it. His complaint says that he is a whistleblower, that his First Amendment rights were violated because he repeatedly raised safety violations and was terminated because of it. So those matters are not on appeal, but if you look at the Second Amendment complaint, those are his own theories. And if you look at his denials about the specific instances of disputes, he denies that he was wrong about the roster and he denies that he was late. He doesn't deny that he repeatedly argued, that he turned into arguments about other things. So if you look at Mr. Geltmacher's final e-mail where he asked, it was Geltmacher who asked that Hodges be removed, not Martinez, it says that his conduct is no longer acceptable to me, the range chief, or the range officer in charge. And that's Sergeant Martinez at law. So you have three different individuals who are determining that his conduct is unacceptable. And as I said, the conduct itself is not disputed. I think that what the evidence suggests actually is that there was a personality conflict between Martinez and Hodges. There's a suggestion, I think, from Mr. Hodges that Sergeant Martinez didn't know what he was doing, that he was inexperienced, that Mr. Hodges had way more experience, and that Mr. Hodges really didn't have a lot of respect for Sergeant Martinez. There's no evidence at all of any racial discrimination, of any indirect. There's no one similarly situated that's been proposed that was treated better. They are proposing Sergeant Morningstar and Mr. Stinson. Well, Sergeant Morningstar, I think the allegation to Morningstar is that she occasionally challenged authority, but Geltmacher said as a declaration that no one challenged authority as repeatedly and with a refusal to accept the answer as Mr. Hodges, and that is undisputed. Stinson was late on the same day that Mr. Hodges was late. He apologized, and he's not similarly situated because he didn't have the same conduct. He didn't have the same record of conduct. I would note that Martinez in the PIP that he wrote up explicitly noted the arguments he had, and this is just six weeks before the termination, gave him clear warning. Rodney has had numerous arguments and confrontations with me in regards to what I can or cannot make him do. We have discussed this in detail with Dan Geltmacher, Gunner Law, and Sean Sullivan. So there's simply no evidence of discriminatory intent. I'm past my seven and a half. Goodbye. That's fine. Thank you. Remarkably close to seven and a half. This may be the closest even split I've ever seen. Congratulations. Good morning, Your Honors. May it please the Court, Claire Wong-Black for Apelli CGI Federal Incorporated, or CGI, the military contractor here. Your Honor asked what CGI did here, and what they did was they followed the Navy's orders. They did what the military directed them to do, and that is their legitimate, non-discriminatory reason for termination, for which there is zero dispute in the record. There's no dispute that Mr. Hodges' termination was the military's request, the basis for Mr. Hodges' termination was the military's request that he be removed from CGI's contract. If we treat the two, if we treat the Navy or the Marines, whatever we're going to call them, and your client as joint employers for purposes at least of summary judgment, does that make any difference? It does not. CGI has not conceded that they are joint employers. They haven't conceded, but we're on summary judgment here, and we don't have an adjudication that you're not joint employers. So I understand the distinction you draw, but I'm not sure it speaks to the issue that's teed up in front of us this morning. It doesn't change the analysis simply because under a joint employer regime, CGI is only responsible for what it reasonably could have known from the other joint employer, and here there's no reflection in the record that there was any racial animus. So opposing counsel suggests that CGI should have investigated more thoroughly and did in fact get e-mails or communications from Mr. Hodges that he was being harassed by Mr. Martinez. Correct, and so I'd like to turn to that alleged harassment complaint, which is at ER 68, as appellant's counsel pointed out. That complaint says, quote, again, I drove the Ford truck to a training area. The master sergeant is saying that he told me not to drive that truck. He never told me that. This is starting to be harassment. So this complaint is not harassment on the basis of race. So the Title VII obligation to investigate is slightly different in that matter, and also Sean Sullivan, the CGI supervisor, stated in his declaration that he did follow up on appellant's complaints and that he did not find that there was any basis, that the complaints were unfounded, they were not about race, gender, or sexual harassment. They were about workplace policies that the appellant did not agree with. Now, turning back to the nondiscriminatory reason, under CGI's contract, the military retained the unilateral right to assess CGI's performance. CGI's professional services had to be accepted by the military. CGI could only staff personnel at Kaneohe Bay at the range facility with the military's agreement. This is at the CGI supplemental record at page 20. And the military could terminate CGI's contract if it failed to comply with any contract term or failed to provide the military with adequate assurances of future performance. So when the military determined that one of CGI's employees, Mr. Hodges, had conduct that was distracting from its mission of marine combat readiness training, CGI responded with progressive discipline, provided Mr. Hodges with counseling and job improvement counseling, but it also acknowledged the military's ultimate authority, telling the range command officer, Don Geltmarker, that, quote, you have your hand on the launch button. If you feel he continues to question authority, yours or otherwise, we will replace him. Just need your nod of approval. That's at the record CSER at page 59. Just a question that wasn't clear to me from the briefing. Did Stanley CGI fire Mr. Hodges when they removed him, or did they give him other job opportunities? What happened after that? They did give him other job opportunities. So CGI had no discretion to keep Mr. Hodges on that particular contract, the Kaneohe Bay contract, contrary to the military's wishes. CGI had no other contract in Hawaii that it could assign Mr. Hodges to in the alternative, and that's at the record CSER at pages 30, 34, and 41. CGI offered Mr. Hodges the opportunity to find another position with either CGI or Stanley, but Mr. Hodges, by his own admission, was not looking to leave Hawaii. So where is it that the other opportunities were offered off of Hawaii? Mr. Hodges testified in his deposition that he asked about Japan, but that he really wasn't looking to leave Hawaii. And so while CGI offered Mr. Hodges the opportunity to find another position, because Mr. Hodges wasn't looking to leave Hawaii, CGI terminated his employment. Is the offer in the record, or are you just referring to his declaration that he wasn't interested in leaving Hawaii? Both Mr. Sullivan's declaration as well as Mr. Hodges' deposition testimony. Said that he was offered other opportunities by CGI? Yes, that he looked into other options, but he wasn't really looking to leave Hawaii. And because the Kaneohe Bay contract is the only contract that CGI has in Hawaii, there really was no alternative but termination. How much time was there between the last incident and the termination? In other words, what was the time span during which he was offered other possibilities? He was thinking about them? That's not clear in the record. So on May 5th, May 5th is the date that the Navy directed CGI to remove Mr. Hodges, and the official termination letter is dated May 12th. So one week. There was a one-week lapse. One week. We have to assume then that potential offers within CGI were proposed and considered and rejected in seven days? I think what the record reflects is that there was a general inquiry made and that Mr. Hodges did ask and Japan was referenced, but ultimately because he did not want to leave Hawaii, which is what he testified to, there was no other contract to assign him to. So there may not have been a reason to look further at other locations and other contracts. Yes, but all of this happened within about seven days. Correct. Correct. And so appellant proffered no evidence that CGI terminated him because of his race or in retaliation for engaging in protective behavior because there simply is none. So for that reason alone, summary judgment should be affirmed. Thank you. Thank you. First of all, CGI never offered Mr. Hodges any other position, and you can look at their letter of termination on page 73 of the record, plaintiff's excerpts of records, and see the actual termination letter. It does not offer him any other jobs. And he testified in his deposition and in his declaration he was not offered any other job. It was simply a termination. And if you look at the letter, they do say you're being terminated because the client requests that you be terminated. Now, the operable time is May 5th because that's the same day Mr. Hodges and Mr. Stinson, a Caucasian coworker, RSS, showed up. Instead of 1 o'clock, they showed up a little later because they thought they were going to start at 3.30, which was their regular hours. And Master Sergeant Martinez had been told, Sergeant Martinez, I'm sorry, had been told that he needed to put the work hours in a schedule before the work dates. And we provided proof that Sergeant Martinez did not do so. So both Mr. Stinson and Mr. Hodges were called to come into work at a different hour when they usually work. Master Sergeant Martinez then told Mr. Hodges and Mr. Stinson they were late. He then, Mr. Hodges looked at the schedule, saw that there was no date or was no time on the date, pointed it out to Martinez. Martinez got upset, contacted Giltmarker by e-mail, and all of this is in the record, and said, Hodges, it's argumentative. He's denying that he was late. By the way, there is no apology in the record from Mr. Stinson. There is a note by Mr. Stinson that says they came in late because they did not know they were supposed to start at that time, the difference between 1 o'clock and 3.30. That's what started this termination. Mr. Hodges, in his declaration, and Sean Sullivan in his deposition admitted, Mr. Hodges calls Sean Sullivan to say, I was not late. There is no time on the schedule. And we did show up when we got the call that we had to show up at the range. And he said that Sergeant Martinez was, again, harassing him. The next thing that happens is, via e-mail, Sergeant Martinez contacts Giltmarker and said, Rodney Hodges is up to his old tricks again. All of this is in writing. Now, what is the old tricks? One doesn't know because Mr. Hodges has never been late. This is the first time he's been late, and it's only because there was no time on the schedule. So this is not a situation where he was offered other type of employment. This is a situation where he was being targeted by Sergeant Martinez. And I know my time is up, and I'm sorry. Thank you. Thank you for your arguments. The case of Hodges versus CGI, and I guess it's Richard Spencer, is submitted.
judges: O'scannlain, Clifton, Ikuta